**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMMY NARANJO,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 4:09-CV-1470** |
| **v.** | : | **(MCCLURE, D.J.)** |
| **RICARDO MARTINEZ, Warden** | : | **(MANNION, M.J.)** |
| **Respondent** | : | |

**REPORT AND RECOMMENDATION[1]**

**I.    Procedural Background**

On July 30, 2009, the petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241, naming as the Warden, Ricardo Martinez as the Respondent.  (Doc. 1).  The petitioner, proceeding *pro se*, paid the filing fee. (Doc. 3).  On August 5, 2009, this Court issued an Order to Show Cause directing the respondent to show cause as to why the petitioner should not be granted relief.  (Doc. 4).  On August 25, 2009, the respondent filed a Response to the petition.  (Doc. 5).  On September 22, 2009, the petitioner filed a Motion for an Extension of Time in which to file a Traverse to the Response, which was granted on September 28, 2009. (Doc. 6 and Doc. 7). However, on October 19, 2009, the petitioner filed a Notice that he would not be filing a Traverse to the Response to the Petition for Habeas Corpus. (Doc. 8).

The petitioner is currently confined at the United States Penitentiary in White Deer, Pennsylvania ("USP Allenwood").  He is serving a 216 month term

_____

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

of imprisonment for Conspiracy to Distribute and Possession with Intent to Distribute Marijuana, 21 U.S.C. §846; Conspiracy to Money Launder, 18 U.S.C. §1956(h); and Uttering False Statements, 18 U.S.C. §1001. He is scheduled to be released on November 10, 2014, via full term release. (Doc. 5, Ex. 1).

By way of background, the petitioner was notified on July 20, 2006 while he was incarcerated at the United States Penitentiary in Coleman, Florida, that he was required to provide a urine sample. (Doc. 1 at 1; Doc. 5, Ex. 1, Att. B). The petitioner complied with the order and his specimen was sent to the National Toxicology Laboratories for testing. *Id.* On August 4, 2006, the Bureau of Prisons ("BOP") received notification that his specimen had tested positive for the presence of opiates/morphine. (Doc. 1 at 1; Doc. 5, Ex. 1, Att. B).

On August 6, 2006, the Health Services staff reviewed the petitioner's medical records and determined he had not been prescribed any medication that would yield a positive result for opiates/morphine. (Doc. 5, Ex. 1, Att. C). At approximately 4:30 P.M., Intelligence Officer R. Evans charged the petitioner with a narcotics violation pursuant to Disciplinary Code 112. (Doc. 5, Ex. 1, Att. B). On that same day, August 6, 2006, the petitioner was provided with a copy of Incident Report No. 1498248. (Doc. 1; Doc. 5, Ex. 1, Att. B).

On September 7, 2006, the Unit Disciplinary Committee ("UDC") held a disciplinary hearing in which the petitioner was afforded the opportunity to make a statement, but chose not to do so. (Doc. 5, Ex. 1, Att. B). He was advised of his rights and signed an Inmate Rights at Disciplinary Hearing form acknowledging that he was advised of his rights. (Doc. 5, Ex. 1, Att. D). After advisement, he waived his right to a staff representative and to call witnesses. (Doc. 5, Ex. 1, Att. E). Due to the serious nature of the charges, the UDC referred the matter to the Disciplinary Hearing Officer ("DHO") for a further hearing and decision. (Doc. 5, Ex. 1, Att. B).

On September 20, 2006, the petitioner's DHO hearing was held.

Petitioner indicated that he received a copy of the Incident Report, that he was advised of his rights and that he understood him. (Doc. 5, Ex. 1, Att. F). The petitioner stated that he was ready to proceed. *Id.* The petitioner did not provide any witnesses or documentary evidence, even though he was provided with an opportunity to do so. (Doc. 5, Ex. 1, Att. F). After consideration of the evidence, including the Incident Report, the Investigation, the National Toxicology Lab Report, a chain of custody form, and a memorandum from the Health Services Department, the DHO determined that the petitioner was guilty of violating Code 112. (Doc. 5, Ex. 1, Att. F). The DHO documented that he also considered the petitioner's statement where the petitioner admitted to the charge, stating "Guilty." (Doc. 5, Ex. 1, Att. F). As a result of this violation, the DHO ordered that the petitioner 1) receive 30 days in disciplinary segregation; 2) lose 27 days good conduct time; and 3) lose visitation privileges for 180 days (followed by 180 days of immediate family visits only). (Doc. 5, Ex. 1, Att. F).

For the reasons set forth below, it is recommended that the petition be **DENIED**.

## II. Claims in the Habeas Petition.

The petitioner essentially claims that the Bureau of Prisons ("BOP") staff at the United States Penitentiary in Coleman, Florida denied him due process of the law when they failed to provide him with a copy of an Incident Report charging him with a Disciplinary Code 112 violation within 24 hours. (Doc. 1 at 7 ). The petitioner also alleges that the BOP attempted to cover up their failure to provide a timely report by filing a memorandum extending the time to hold a disciplinary hearing. (Doc. 1 at 7).

The petitioner requests that this court "generate an Order to the Bureau of Prisons to expunge the record of the 'Incident Report' and restore the 27 days of good time that was lost in this matter." (Doc. 1 at 7).

-3-

### III. Discussion

The petitioner claims that the BOP violated his due process rights when they failed to give him the Incident report within 24 hours. (Doc. 1).

In *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974), the Supreme Court identified the minimum procedural due process rights to be afforded a prisoner accused of misconduct which may result in loss of good conduct time. Those rights are applicable in the instant case. The prisoner has (1) the right to appear before an impartial decision making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67; *McRae v. Holt*, Civil No. 08-0346, M.D. Pa.; *Redding v. Holt*, 2007 WL 2155543, *6 (M.D. Pa.).

In *Redding*, the Court stated:

The Bureau of Prisons ("BOP") has specific procedures for inmate discipline pursuant to 28 C.F.R. § 541.10, et seq. The regulations, in relevant part, provide:

> [I]f the DHO finds that the inmate has committed a prohibited act(s) other than the act(s) charged, then the DHO shall record those findings clearly and shall change the Incident Report to show only the incident and Code references to charges which were proved.
> § 541.17(f).

In *Wolff v. McDonnell*, 418 U.S. 539, 563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the United States Supreme Court described the constitutional due process requirements for prison disciplinary

proceedings implicating the infringement of a cognizable liberty interest, such as the loss of good time credits. In relevant part, Wolff requires an inmate to receive at least twenty-four (24) hours notice of the alleged violations in writing. *Id*. at 564. The Court observed, "[T]he function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 563-67. Additionally, the fact finder must state in writing the evidence relied upon and the reasons for the disciplinary action. *Id*.

In addition to the due process requirements set forth in *Wolff* with respect to cases involving loss of good conduct time, the Court in *Williams v. Hislop, 2007 WL 4111427, *4 (M.D.Pa. 2007)*, outlined the Bureau of Prisons' inmate disciplinary procedures:

> The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. §541, et. seq., and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994).* Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. §541.14. The incident is then referred to the UDC for an initial hearing pursuant to §541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends, or holidays. *See* 28 C.F.R. § 541.15(b). ... If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer

the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. §541.15. "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. §541.17(g).

In the present case, it is clear that the petitioner was afforded all the rights set forth in *Wolff* and in the BOP's regulations. The BOP staff became aware that the petitioner's urine specimen tested positive for opiates/morphine on August 4, 2006. However, since they were unsure whether this result could be caused by prescribed medication, they had Health Services review his medical records. According to the evidence of record, Health Services reviewed the petitioner's records on August 6, 2006. The staff became aware that the petitioner could be charged with a violation of Code 112 on this date and immediately notified the petitioner. The petitioner was issued Incident Report No. 1498238 on August 6, 2006, charging him with a violation of BOP Disciplinary Code 112, Use of Any Narcotic. (Doc. 5, Ex. 1, Att. B). Thus, the respondent is correct that the BOP did not violate any BOP policy or regulation.

There is no other alleged evidence of a violation of due process. The Petitioner received 45 days advanced notice of his hearing with the DHO, well beyond the 24 hour required notice as outlined in Wolff. He had ample opportunity to prepare his defense. He had the opportunity to call witnesses and present documentary evidence but failed to do so. He did not request assistance from a staff representative during his hearing. The DHO issued a decision outlining the evidence relied upon and the rationale behind his action. (See Doc. 5, Ex. 1, Att. F). Thus, there is no evidence of a due process violation.

Lastly, the petitioner further claims that the BOP engaged in fraud by back-dating a signed memorandum by the warden which extended the time for

-6-

his UDC hearing. He claims that the date on the memorandum is within the proper time frame for an extension but that the memorandum was actually typed and entered into the computer well after the three day grace period had expired. He cites 28 C.F.R. §541.15(b). He claims that it is possible for any BOP employee to "go into the computer and draft a memorandum with whatever date they desire on it." However, he fails to offer any evidence that anyone altered the time on this document and acknowledges that the time is correct. Insofar as he cites a three day grace period, the DHO noted that his hearing was held late due to his Incident Report being suspended for further investigation. The DHO noted that this was explained to the petitioner at the UDC hearing and the DHO hearing. The DHO stated that there was a signed memorandum by the warden granting this extension and the petitioner fails to provide any evidence that this memorandum was falsified. The DHO also noted that this delay in hearing would not hinder the petitioner's due process rights. This appears correct, as the delay gave the petitioner more time to prepare his defense and he does not claim that this hindered his due process rights.

## IV. Conclusion

For the foregoing reasons, **IT IS HEREBY RECOMMENDED THAT** the petition for writ of habeas corpus be **DENIED**.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE**: April 28, 2010
O:\shared\REPORTS\2009 Reports\09-1470-01.wpd